PHILIP E. LERMAN, Chairman, Department of Industry, Labor andHuman Relations
You have raised three questions concerning the applicability of secs. 103.64, 103.70 and 103.805 of our Child Labor Law to the Neighborhood Youth Corps (NYC) program which is authorized by Title I-B of the Economic Opportunity Act of 1964. *Page 257 42 U.S.C. §§ 2701-2994d. More specifically you ask the following three questions:
"(1) Whether being enrolled in the NYC program establishes an employe-employer relationship;
"(2) Whether work permits must be issued to the NYC as the employer;
"(3) Whether your department has the authority to waive the permit fee for such a federally sponsored program."
The purpose of the NYC program is to provide work-training experience to poor youth between the ages of 14 and 21. Based upon past experience, these youth generally are placed in day care centers, hospitals and offices of various service agencies with the Manpower Administration of the Department of Labor formally contracting with public or private nonprofit organizations to sponsor, locally administer and operate NYC projects.
The program is 90 percent federally funded with the additional 10 percent coming from local matching funds. Approximately 85 to 90 percent of these funds are paid to enrollees who are voluntarily assigned to public or nonprofit private organizations for work experience and daily supervision. The remaining funds are used to (1) finance administrative project staff costs, (2) provide for counseling, (3) achieve testing and (4) provide general supportive services. The local 10 percent matching share is usually provided in kind such as in the form of supervision, space, equipment and similar expense factors. Included in all NYC contracts for the guidance of local sponsors are general and specific provisions and specifications which you have forwarded to me in the form of three separate attachments. Only the sponsor may enroll or terminate NYC enrollees. All projects are monitored and generally supervised by Manpower Administration field representatives from the Department of Labor. The sponsor reports monthly in writing to the Department of Labor concerning enrollments, terminations, financial expenditures, enrollee characteristics and other relevant data.
The local sponsors apparently pay the enrollees in the first instance because the sponsors are required to make all necessary deductions from checks issued. Thereafter the sponsors are *Page 258 
reimbursed by the Department of Labor for this payment of wages which, according to representatives of your Department, currently runs approximately $1.65 per hour.
My office has been informed by the Chicago district office of the Department of Labor that the Department of Labor has established a distinction between "enrollees" in this program and "employes" and, therefore, claims that it will refuse to reimburse local sponsors for the cost of work permits. I feel that my opinion, however, must be based upon a combined reading of applicable Wisconsin law and the requirements of the NYC program. Furthermore, sec. A-45 of the Manpower Administration's General Provisions for Cost-Reimbursement Type Contracts provides that the contractor "will comply with all applicable federal and state and local laws, rules, and regulations which deal with or relate to the employment of persons who perform work or are trained under this contract."
It is my opinion that an employe-employer relationship does exist within the NYC program. This is true when the facts you have presented are applied to both (1) relevant Wisconsin Statutes and (2) a history of Wisconsin case law.
Section 103.64, Stats., provides that certain terms enumerated therein shall be construed, as used in secs. 103.64 to 103.82, as defined in sec. 101.01. The relevant definitions contained within sec. 101.01 clearly established an employe-employer relationship within the NYC program.
For example, the phrase "place of employment," is construed to include every place where any industry, trade or business is carried on or where any process or operation directly or indirectly related to any industry, trade or business is carried on or where any person is employed by another for direct or indirect gain or profit. Sec. 101.01 (2) (a), Stats. Under subsec. (2) (c), an "employer" includes every person, firm, corporation, state, county, town, city, village, school district, sewer district, drainage district and other public or quasi-public corporations having control or custody of any employment, place of employment or of any employe. Subsection (2) (d) defines an "employe" as every person who may be required or directed by an employer, in consideration of direct or indirect gain or profit, to engage in any employment or to go or work or be at any time at any place of employment. *Page 259 
As you have described the NYC program, there can be no question that the locations at which the so-called work-training takes place fall within the definition of a place of employment. Moreover, the so-called enrollees within this program fit the definition of an employe because, in consideration of the wages paid, they are required or directed to engage in employment or at the very least to be at a place of employment, consistent with the terms of the program. Nothing would bar the organizations for whom the services are rendered from falling within the broad definition of an "employer" under sec. 101.01 (2) (c). Looking to the statutory definitions alone as applied to these facts, an employe-employer relationship does exist.
It repeatedly has been held by our court that the primary test for determining if an employe-employer relationship exists is whether the alleged employer has the right to control the details of the work. Subsidiary and secondary tests include (1) direct evidence of the exercise of the right to control, (2) the method of payment of compensation, (3) the furnishing of equipment or tools for the performance of the work and (4) the right to fire or terminate the relationship. See Ace Refrigeration H. Co. v.Industrial (1966), 32 Wis.2d 311, 315, 145 N.W.2d 777, and cases cited therein.
From your explanation of the program and from an examination of the attachments, there can be no question concerning the presence of an employe-employer relationship. Although the sponsors are required to report periodically to the Department of Labor which monitors all projects, it is clear that such reports are based upon the sponsors' being in a position to control the details of the work to the extent that each sponsor knows and directs the day-to-day activity of each enrollee. The specifications to which reference was made earlier repeatedly state that it is the sponsors' duty to pay all wages and make all necessary deductions and the sponsors' sole right to terminate the relationship after meeting certain requirements of due process. As for the furnishing of equipment or tools for the performance of the work, there is no express provision that the enrollees provide their own tools and, therefore, it must be assumed that adequate tools or equipment are available at each work-training site. Considering all of the factors which must be weighed in determining whether an employer-employe relationship exists, I have no difficulty in finding such *Page 260 
relationship by statute and by case interpretation between the local sponsors and minors participating in the NYC program.
You next ask whether work permits should be issued. Section 102.70, Stats., provides that, except as otherwise provided, a minor under 18 years of age shall not be employed or permitted to work at any gainful employment or occupation unless he first obtains a work permit. Assuming that the enrollees in the NYC program do not fall within any of the exceptions, it is my opinion that all those under 18 years of age must be covered by an appropriate work permit. Prior to the enactment of ch 271, Laws of 1971, each minor was required to pay for his or her own work permit. Section 36 of ch. 271, however, repealed and recreated sec. 102.805 to provide that the employer rather than the minor is responsible for payment of the fee. The minor may advance the fee provided that the employer reimburses him no later than the end of the first pay period.
Members of your staff have indicated that some organizations have resisted the purchase of work permits because the federal government has stated or implied that no reimbursement would be forthcoming. All of the materials which you have submitted clearly provide that each sponsoring organization must carry workmen's compensation insurance which carries with it the alternatives that all sponsors procure necessary work permits or subject themselves to liability for double compensation if any minor employe is injured pursuant to sec. 102.60 (1), Stats. If these terms are considered unacceptable, any prospective sponsor may refuse to participate in the program.
Finally you ask whether your department has the authority to waive the permit fee for such a federally sponsored program. I find no such authority under either state law or federal law nor within the voluminous materials which you have forwarded relating to this work-training program. The only reference to possible waiver or modification of permit requirements applies to golf caddies under sec. 103.79 (2), Stats. If the legislature had intended to extend such waiver or modification privilege beyond golf caddies, it easily could have done so by inserting additional language into existing statutes *Page 261 
or by anticipating possible favorable treatment for the NYC program if such had been the legislature's intent.
RWW:DPJ